WESTERN ELECTRIC CO. v. WESTERN TELEPHONE CONSTRUCTION CO. et al.

(Circuit Court, N. D. Illinois. February 10, 1897.)

PATENTS—NOVELTY AND INVENTION—TELEPHONE SWITCHES.
   The Watson patent, No. 270,522, for an improvement in telephone switches, is void as to all its claims, in view of the prior state of the art, as involving only clever mechanical expedients in arranging a subscriber's outfit.

This was a suit in equity by the Western Electric Company against the Western Telephone Construction Company, James E. Keelyn, Madison B. Kennedy, and Isador Baumgartl, for alleged infringement of a patent for an improved telephone switch. On final hearing.

F. P. Fish and Barton & Brown, for complainant.
· Stanley S. Stout, for defendants.

SHOWALTER, Circuit Judge. The complainant sues for the infringement of letters patent of the United States, No. 270,522, issued January 9, 1883, to the American Bell Telephone Company, assignee of the applicant, one Thomas A. Watson. As stated in the specification, the subject-matter of the invention is "An Improvement in Telephone Switches." I quote further from the specification: ·

"The invention consists in the use of a single lever in connection with a telephone and a call circuit and proper contact points, in such manner that a movement of the lever in one direction disconnects the call circuit from the main line, brings in the hand telephone and secondary circuit of the transmitter, and at the same time completes the primary local circuit of the transmitter, while a move-

ment of the lever in the other direction cuts out the hand telephone and secondary circuit of the transmitter, and restores the call circuit. The invention consists further in making the lever operative as a switch, as aforesaid, in the form of a hook supporting the hand telephone, and combining therewith a spring, in such manner that taking the hand telephone from the hook causes the lever automatically to disconnect the call circuit, bring in the hand telephone, and secondary circuit of the transmitter, and complete the local primary circuit; while hanging the hand telephone upon the hook causes the lever to automatically cut out the hand telephone and secondary circuit of the transmitter, and restore the call circuit."

The patent contains eight claims, and it is insisted that each claim is valid, and has been infringed. The fourth claim is as follows:

"In combination with a magneto-generator, a main line telephone circuit and a shunt circuit passing through the magneto generator, the push button, U, to break the shunt circuit, substantially as described."

As shown by the specification and diagrams, when a signal call is sent to the office of a subscriber, the current passing over the main line, coming to the stud, t, in the instrument, passes around the magneto-generator through the contact point, T. When a subscriber desires to signal, he breaks the contact at T, by means of a push button, and the current is then sent through the call circuit by means of the magneto-generator, its coils being then in line. If the generator were operated without breaking the contact at T, I suppose there would be a short circuit around the magneto-generator from the point T, through the coils of the magneto-generator to t, thence, by wire w$^{15}$ to T. By pressing the push button, U, the current generated by the magneto-generator is necessarily sent through the line. The function of the press button, U, is thus to bring the coils of the magneto-generator into line when the subscriber desires to signal a distant station, and to leave these coils out of line, and so get rid of the resistance which would otherwise be offered by them when a signal is sent to his office. The expedient here shown, as I understand from the evidence, is common and well known to electricians. In the patent, for instance, to T. A. Edison, No. 203,017, the secondary coil is short circuited when the instrument at the subscriber's office is in condition to receive a signal. If this long coil were left in circuit, the resistance would be too great. It is therefore shut out of the circuit when the instrument is not in use, and is in condition for receiving a signal. The movement of the handle, S, away from the point 2, where it ordinarily rests, breaks the short circuit in the Edison patent, and brings the secondary coil into line. In that patent the secondary coil, acted on inductively by the primary coil, is used in the place of a magneto-generator. By throwing the handle, S, to the contact point, 3, a subscriber gives the signal when he wants to communicate with a distant station. The breaking of the short circuit, when the magneto-generator is to be used in the patent in suit, is accomplished substantially in the same way in the Edison patent, and the same purpose is in view in both cases, namely, to keep the long wires of the magneto-generator in the one case, and of the secondary coil in the other, out of the circuit, in order to get rid of the increased resistance.

In view of the evidence here, and of the patents introduced, I see no novelty in the combination of the fourth claim; nor, for substantially the same reasons, is there any novelty in the fifth claim.    I may add, also, as respects the fifth claim, that it is rather an aggregation than a patentable combination.    The push button, in connection with the call circuit, serves to bring into line and shut out of line the magneto-generator; but the switch lever and its contacts serve to combine the three circuits,—the call circuit, the local circuit, and the telephone circuit; that is, to break the call circuit, and put it out of use, when the other two circuits are in use.    These three circuits are made and broken by means of the switch lever, but the push button has nothing to do with the operation of that lever.    No modified result follows from any combination of the push button in the call circuit with the switch lever.    When the subscriber wishes to give a signal at a distant station, he does not touch the switch lever or hook; nor, when a signal is sent to him from a distant station, is the switch lever or hook in that operation manipulated in any way at either station.    The switch lever, so far as the signal or call circuit is concerned, is simply part of the circuit.    That circuit could be used merely for signaling purposes independently of the rest of the machine.    For that purpose, the switch lever or hook has no function whatever, as already said, except as a mere part of the circuit.    The function of the shunt circuit, push button, and magneto-generator is limited to the call circuit, and the hook or switch lever serves no function as a hook or switch lever in connection with the push-button, the magneto-generator, and the shunt circuit.    The claim, therefore, joining the switch lever with its contact points (whereby, according to the position of the switch lever, it completes either the call circuit or the telephone circuit), with the magneto-generator, the shunt circuit, and the push button in the call circuit, is an aggregation, rather than a patentable combination.    But, at all events, my opinion is that there is no novelty in either the fourth or the fifth claim, in view of the evidence shown in the record.

The first claim is in words following:

"In combination with suitable contact points and springs electrically connected with the call circuit and the primary and secondary circuits of the transmitter, the latter circuit including the hand telephone, a lever electrically connected with the main line in a telephone circuit, substantially as described, to bring in the hand telephone and transmitter, and break the call circuit; or to cut out the hand telephone or transmitter, and establish the call circuit, according as the lever is moved in one direction or the other."

The second and third claims show, in addition to what is set forth in the first, the hook and the spring by which it is thrown up when relieved of the weight of the hand telephone.    The sixth, seventh, and eighth claims are apparently covered by the first, second, and third.

On the showing of the drawings and specification, when a subscriber is not using his telephone, it hangs on a movable hook, which is the end of the lever.    The hook then rests in such a position that the call circuit is complete.    By removing the weight of the telephone from the hook, a spring throws the hook up, and, by means of two contact points, two electrical circuits are established,—one, the

local, and the other, the circuit to line. The function of the local circuit is to create the electrical current in the telephone circuit by induction. This special use of a local current, in connection with a transmitter, for inducing the current in the main line, is not of itself claimed in this patent. The patentee Watson was not the inventor of the same. What he does in the patent in suit is to utilize these two currents in connection with the call circuit. Prior to the times when a separate transmitter was made use of, the telephone was used both as a receiver and as a transmitter, and, instead of the three circuits, there was only the call circuit and the telephone circuit. While the art was in this condition, patent No. 209,592 was issued to the same T. A. Watson, and patent No. 215,837 to one Hilborne L. Roosevelt. In the last-named patent there was a spring, S, fixed horizontally, with one end swinging between two contact points. On a hook attached to this spring the telephone was suspended. Its weight kept the end of the spring on the lower contact point. When it was taken up for use, the end of the spring, being relieved of its weight, passed to the other contact point, and the call circuit was completed. The signal being given, and the weight of the telephone at the remote station being then taken from the spring, the call circuit was broken, and the telephone circuit was established. Instead of the spring, S, a lever pivoted at the fulcrum and with a coiled spring, to antagonize the weight of the telephone, might have been made use of in such a way that, when the telephone was hung up, one end of such lever would be pulled down to the contact point, A, and, when the telephone was taken down for use, the spring would throw the lever end away from the contact point A to the contact point B. It may also be suggested, in connection with the device of the Roosevelt patent, that either the line for the call circuit, or that for the telephone circuit, might, by means of a local circuit, have been supplied with current by induction, and two contacts above or two below might have been made use of in connection with the lever already suggested to break and complete these circuits as required. In other words, the patent to Roosevelt shows a switch, S, swinging between contact points, whereby the subscriber himself, by taking up the telephone for use, unconsciously causes said switch to leave one contact point, and pass to another. For this switch, S, as suggested, a lever might have been substituted, and another contact point might have been added. The idea of using the weight of the telephone to keep the instrument in readiness for a signal, and of making all necessary connections, by simply taking down the telephone for use in answer to the signal, is found in the Roosevelt patent.

In patent No. 209,592, a lever was suspended vertically on a pivot, with its lower end swinging between two contact points. From its upper end horizontal arms were extended, and between these the telephone, when not in use, was hung. The weight of the telephone kept the lower end of the lever in connection with the contact point, whereby the call circuit to the subscriber's office was completed when the telephone at a distant station was taken down. When the telephone at the subscriber's office was lifted from its position for use, the lower half of the lever, by means of a spring, was thrown towards

the other contact point; and, by that means, first a signal was made at the distant station, and then, the telephone being also taken down at the latter station, the telephone circuit was established. In the patent in suit a separate transmitter, involving a local circuit, in connection with a telephone circuit, is made use of. Instead of the two contact points of patent No. 209,592, three contact points are required; and when the lever swings from the call circuit, by means of the two contact points, both the local circuit and the transmitter circuit are completed. The witness Bain has made a diagram in connection with Fig. 3 of the patent No. 209,592, whereby he has added the two contact points, and has arranged the three circuits, including the magneto-generator with its push button in the call circuit.

It is said on behalf of complainant that the ends of the wires of the secondary coil of the transmitter were left in the air. It is obvious that by bringing these two wires down below the telephone in that figure, cutting the telephone wire, and inserting their ends, the secondary coil of the transmitter is brought into line with the telephone; and, in my judgment, Fig. 3, as amended by the witness Bain, shows all of the elements of claim 1 of the patent.

In view of the state of the art, as indicated in this record, and which I deem it needless to further enlarge upon, my judgment is that there is no novelty or invention in any one of the eight claims; nothing more than the use of clever mechanical expedients in arranging a subscriber's outfit. The bill is therefore dismissed for want of equity.